IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM PIMENTAL,<br><br>               Petitioner,<br><br>    v.<br><br>WARREN L. MONTGOMERY,<br>Warden,<br><br>               Respondent. | Case No. 16-cv-2212-LAB (DHB)<br><br>**REPORT AND RECOMMENDTION OF UNITED STATES MAGISTRATE JUDGE REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

William Pimental ("Petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis* with a 28 U.S.C. § 2254 petition for writ of habeas corpus ("Petition"), seeks relief from his September 17, 2013 conviction and his 16 years sentence stemming from San Diego Superior Court Case No. SCD246994 for one count of active participation in a criminal street gang, one count of assault by means likely to produce great bodily injury ("GBI"), and one count of assault with a deadly weapon. (*See* ECF No. 1 at pp. 1-2.[1]) Petitioner alleges the following grounds for relief: (1) the prosecutor knowingly introduced false evidence through

---

[1] Unless otherwise noted, page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing (ECF) system.

the testimony of witness Betty Edwards, (2) ineffective assistance of counsel, and (3) insufficient evidence, and (4) instructional error.[2] (ECF No. 1 at pp. 7-31.) Warren L. Montgomery ("Respondent") filed an Answer on January 6, 2017, opposing any habeas relief. (ECF No. 9.) Petitioner filed a Traverse on April 17, 2017. (ECF No. 19.) The Court has reviewed the pleadings, the record, and controlling law, and for the reasons discussed below, hereby **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED**.

## I. BACKGROUND[3]

Betty Edwards testified that, on March 25, 2013, she was driving past the Encanto trolley station in San Diego when she saw two young men, later identified as Raphael Castro and John Sanchez from the Encanto criminal street gang, trying to "jump" another young man, Pedro Arellano, from the rival Shelltown gang. (ECF No. 1 at p. 108.) Edwards told the attackers to leave Arellano alone, but they did not heed her. *Id.* After the attack, Castro and Sanchez briefly talked to Petitioner—who had just gotten off the trolley and was an older Encanto gang member—telling him that a rival gang member had "fucked up one of their homies." *Id.* Pimental replied, "Go get him." *Id.* Castro and Sanchez then began chasing Arellano as Petitioner ran alongside them. *Id.* at pp. 108-109. During the incident, Edwards heard the participants shout "Encanto" and "Shelltown." *Id.*

Edwards also testified that during the stabbing incident, Petitioner was nearby in the Encanto trolley station parking lot. *Id.* at p. 109. Afterwards, Petitioner told Castro and Sanchez that the two of them needed to leave the scene. *Id.* Petitioner did not leave on the trolley because Arellano had boarded that trolley. *Id.* After the

---

[2] Petitioner conceded his fourth ground for relief and agreed that the state court's rejection of his instructional error claims regarding the aiding and abetting instruction and the natural and probable consequences doctrine was not contrary to or an unreasonable application of Supreme Court authority. (ECF No. 19 at p. 6.) Therefore, the Court will not address this ground herein.
[3] The factual background taken from prior state court orders and modified.

2

incident, Edwards told Petitioner that he was going to jail. *Id.* Petitioner replied, "Bitch, shut up. These are my little homies. Stay out of it. I told them to do it." *Id.*

Kimberley Johnson testified generally in accord with Edwards's testimony. *Id.* at 109. Johnson identified Petitioner as an older male who yelled, "69," while encouraging Sanchez and Castro during the incident.[4] She added that she asked Petitioner why he had not told Sanchez and Castro to stop attacking Arellano, but Petitioner told her to shut up. *Id.* at pp. 109-110.

Arellano testified that, during the fight, Petitioner intervened on his behalf, telling one of the attackers, "Stop. Get off of him," and pulling an attacker off of Arellano. *Id.* at p. 109.

San Diego Police Department Detective Damon Sherman, who testified as a gang expert, interviewed Petitioner post arrest. *Id.* at p. 110. In that interview, Petitioner admitted that he was present at the crime scene, knew the attackers, and knew that Arellano belonged to a different gang. *Id.* Petitioner also admitted to seeing one of the attackers armed with a knife before the stabbing. *Id.* Petitioner explained why he did not stop the fight, stating, "If I were to, you know, even hold my little homies from proceeding in this activity, that there might be a possible consequence…'for I.'" *Id.* Detective Sherman testified that Petitioner was a member of the Encanto gang based on his own admission, his association with gang members, and his gang tattoos. *Id.* at p. 111. Detective Sherman also identified three predicate crimes committed by Encanto gang members. *Id.* at pp. 110-111. Detective Sherman testified the attack on Arellano was gang related in part because it occurred within the Encanto gang territory and the participants shouted gang names during the incident. *Id.* at p. 111. Detective Sherman further testified about

---

[4] A San Diego Police Officer testified that the Encanto gang claims the number 69 as their symbol because 69th street runs through the Encanto neighborhood. *Id.* at 109.

the individuals involved in the incident, based on surveillance videos, which were played for the jury. *Id.*

On September 17, 2013, a jury convicted Petitioner of the following counts: count one, active participation in a criminal street gang (Pen. Code § 186.22, subd. (a).); count two, assault by means likely to produce great bodily injury (Pen. Code § 245, subd. (a)(4)); and, count three, assault with a deadly weapon (Pen. Code § 245, subd. (a)(1).) (ECF No. 1 at p. 49.) The jury also found true allegations that Petitioner committed counts two and three for the benefit of, at the direction of, or in association with a criminal street gang, pursuant to Penal Code section 186.22, subdivision (b)(1). *Id.* The trial court sentenced Petitioner to 16 years in prison. *Id.*

On October 28, 2013, Petitioner filed an appeal with the California Court of Appeal, Fourth Appellate District, Division One in which he alleged that there was insufficient evidence to support his convictions and findings on the gang allegations. *Id.* The appellate court denied Petitioner's appeal in its entirety and affirmed the trial court's judgment in an unpublished opinion on January 27, 2015. *Id.* at p. 50. Petitioner then filed a Petition for Review with the California Supreme Court, which was denied on April 15, 2015. *Id.* at p. 50.

On January 11, 2016, Petitioner filed his Petition for Writ of Habeas Corpus ("Petition") with the Superior Court of California, County of San Diego alleging two claims: (1) ineffective assistance of trial counsel, and (2) the prosecutor knowingly admitted false evidence. (ECF No. 1 at p. 50.) The Superior Court denied Petitioner's petition in its entirety on February 18, 2016. *Id.* at pp. 49-53. Petitioner did not file his Petition for Writ of Habeas Corpus in the California Court of Appeal. *Id.* at p. 3. Petitioner filed a petition for writ of habeas corpus with the

California Supreme Court which was summarily denied it without citations on June 8, 2016.[5] *Id.* at p. 47.

## II. DISCUSSION

### A. Standard of Review

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls review of this Petition. *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1) and (2); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in the United States Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694

---

[5] Therefore, the Superior Court provided the "last reasoned decision" addressing Petitioner's first two grounds for relief while the California appellate court on direct appeal provided the "last reasoned decision" addressing Petitioner's insufficient evidence ground for relief.

5

16-cv-2212-LAB (DHB)

(2002). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

"Clearly established federal law" means the law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). "[W]hen a Supreme Court decision does not 'squarely address[] the issue' . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue," and the federal court "must defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). See also *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (the lack of holdings from the Supreme Court on the issue presented precludes relief under 28 U.S.C. § 2254(d)(1)).

In applying 28 U.S.C. § 2254(d)(2), federal habeas courts must defer to reasonable factual determinations made by the state courts, to which a statutory presumption of correctness attaches. 28 U.S.C. § 2254(e)(1); *see Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). To determine whether habeas relief is available under § 2254(d), the Court "looks through" to the last reasoned state court decision as the basis for its analysis. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-8-3 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Andrade*, 538 U.S. at 75-76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

///

**B. Prosecutorial Misconduct – Knowing Introduction of False Evidence**

Petitioner argues that the prosecution either knowingly used or failed to correct false testimony, namely Betty Edwards' testimony that Petitioner encouraged the second assault on Arellano. (ECF No. 1 at pp. 7-9.) Petitioner highlights Edwards' testimony during cross examination where she testified that Petitioner admitted to her that he "told them [Castor and Sanchez] to do it." *Id.* at p. 7. However, Petitioner contends that the record is "devoid of any statements by Edward[s] telling police those specific words allegedly made by Petitioner." *Id.* Moreover, Petitioner asserts that Edwards never told Officer Villagran that he told her that, "[H]e told them to do it." *Id.* at p. 8.

The Superior Court reasoned as follows:

> "Petitioner provides no basis in law or in fact to support his proposition that the prosecution knowingly introduced false evidence against Petitioner. Petitioner cites to portions of the reporter's transcript, which he purports is the testimony of Betty Edwards, but fails to submit the actual records for review. Moreover, even if the court assumes, *arguendo*, that Ms. Edwards testified as Petitioner claims she did, there is absolutely no basis for the court to believe that Ms. Edwards rendered false testimony. In fact, the testimony Petitioner claims Ms. Edwards gave at trial appears substantially similar to the statement she allegedly gave Officer Villagran. Furthermore, Petitioner fails to prove that any inconsistencies were material or probative on the issue of Petitioner's guilt. To the contrary, according to both the alleged testimony at trial and the police report of Officer Villagran, Ms. Edwards essentially identified Petitioner as an instigator who told his fellow gang members to 'get [the victim]' before the assault occurred."

(ECF No. 10-16 at pp. 4-5).

In opposition, Respondent argues that the state court reasonably rejected the claim that the prosecutor presented false testimony. (ECF No. 9-1 at pp. 9-11.) Specifically, Respondent points out the state court's finding that Petitioner failed to support his claim with any documentary evidence. *Id.* at p. 10 (citing ECF No. 10-16 at p. 4). Also, Respondent highlights the state court's findings that Ms. Edwards' testimony "appear[ed] substantially similar to the statement" that Edwards gave to Officer Villagran and Petitioner "fail[ed] to prove that any inconsistencies were material or probative on the issue of [Pimental's] guilt." *Id.* at p. 10 (citing ECF No. 10-16 at p. 4). Respondent ultimately asserts that Petitioner's claim should be rejected because he has failed to meet his burden to establish a factual basis for attributing knowledge to the government that the testimony was false. (ECF No. 9-1 at p. 11.) For that reason, Respondent argues the state court's rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent. *Id.*

In his reply, Petitioner contends it was a critical omission that the jury never heard from Officer Villagran that, on March 25, 2013, Edwards failed to precisely state that Petitioner confessed, "[H]e told the little homies to do it." (ECF No. 19 at p. 4.) Petitioner alleges that Edwards perjured herself when she testified that Petitioner instructed Castro and Sanchez to attack the victim. *Id.* In addition, Petitioner asserts that Edwards' false testimony was material to the disputed issue of whether Petitioner aided and abetted the underlying assault. *Id.*

**Analysis**

The "clearly established law" upon which Petitioner claims he is entitled to habeas relief is *Napue v. Illinois*, 360 U.S. 264, 269 (1959), wherein the Supreme Court declared, "[A] conviction obtained through the use of false evidence, known to be such by representatives of the State must fail under the Fourteenth Amendment." In other words, "[A] criminal defendant is denied due process of law

8

when a prosecutor either knowingly presents false evidence or fails to correct the record to reflect the true facts when unsolicited false evidence is introduced at trial." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005).

Petitioner's contention that Edwards' trial testimony is inconsistent with her statement to police is undercut by the record. Officer Villagran's report was attached to Petitioner's initial habeas petition before the Superior Court. (ECF No. 10-17 at pp. 122-123.) Under the heading "Statement of Betty Edwards (Witness)," Officer Villagran reported that Edwards saw Petitioner, not hitting Arellano, but telling Sanchez and Castro to, "Get him." *Id.* at pp. 122-123. Officer Villagran's report explains Edwards stated to the police that Petitioner said, "Shut up those are my Lil homies," and continued to yell, "Get him," as Edwards told the three males to stop fighting. *Id.* at p. 123. On cross examination, Edwards responded, "Yeah. I told them that[;]" when asked, "So you don't recall telling the officers that Mr. Pimental told you, "I told them to do it?" (ECF No. 10-3 at p. 86.) The Court finds that the state court correctly reasoned, "[T]he testimony Petitioner claims Ms. Edwards gave at trial appears substantially similar to the statement she allegedly gave Officer Villagran." (ECF No. 10-16 at pp. 4-5). Although, Officer Villagran's report does not state verbatim that Petitioner stated, "I told them to do it;" her statement and testimony together corroborate the prosecutor's contention that Petitioner aided and abetted the assault by encouraging the attackers. Petitioner fails to address Edwards' statements included within Officer Villagran's report which were consistent with her testimony at trial.

Moreover, assuming *arguendo* the statement by Edwards was false, Petitioner has not shown that the prosecutor knew the statement was false at the time Edwards testified at trial. Accordingly, the Court finds that the state court's reasoning was neither contrary to, or involved an unreasonable application of clearly established federal law nor resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented at trial. Therefore, the Court **RECOMMENDS** that Petitioner's claim of habeas relief on the ground of prosecutorial misconduct and/or a due process violation resulting from a conviction based on false testimony be **DENIED**.

### C. Ineffective Assistance of Counsel – Cumulative Errors

Petitioner alleges that trial counsel was ineffective for failing to do the following: (1) object to three instructions later submitted to the jury, CALCRIM Nos. 358 [Evidence of Defendant's Statements] (*see* ECF No. 10-1 at p. 42.), 359 [Corpus Delicti: Independent Evidence of a Charged Crime] (*Id.*), and 1403 [Limited Purpose of Evidence of Gang Activity] (*see id.* at p. 54.); and (2) impeach witness Betty Edwards. (ECF No. 1 at pp. 11-27.) Petitioner ultimately asserts that his trial counsel's cumulative errors require reversal. *Id.*

The Superior Court of California, San Diego County, denied Petitioner's ineffective assistance of counsel ("IAC") claim as follows;

> "Here, Petitioner failed to provide evidence showing that his counsel's performance fell below an objective standard of reasonableness or that any potential deficiency prejudiced Petitioner's defense. For example, Petitioner claims that counsel failed to object to prejudicial jury instructions and evidence, and did not properly impeach a critical witness. However, Petitioner fails to provide a single portion of the trial transcript to support his self-serving statements. Moreover, the Petition contains no evidence establishing that the outcome of Petitioner's trial would have been affected had his counsel made the alleged requisite objections or presented the purported impeachment evidence. As such, Petitioner has not shown a reasonable probability exists that, but for his trial counsel's purported errors, the result of the proceedings would have been more favorable to Petitioner. Therefore,

> Petitioner has failed to show the requisite deficient representation and prejudice to maintain his ineffective assistance of counsel claims."

(ECF No. 1 at p. 52.)

Respondent argues that the state court reasonably rejected Petitioner's IAC claim. (ECF No. 9-1 at pp. 11-14.) Respondent reiterates that Petitioner fails to demonstrate deficient performance as he failed to present affidavits from trial counsel to explain why counsel did not object to the challenged instructions or attempt to impeach Edwards. *Id.* at pp.13-14. Also, Respondent contends Petitioner failed to establish prejudice since the jury instructions were intended to limit the purposes for which certain evidence could be considered against him. *Id.* at p. 14. Respondent similarly contends that Petitioner failed to establish how not impeaching Edwards negatively affected the verdict for Petitioner. *Id.*

In reply, Petitioner argues that Respondent's contentions should be rejected. (ECF No. 19 at p. 5.) Specifically, Petitioner claims that no evidence needs to be presented until an evidentiary hearing is conducted, for which Petitioner believes his allegations entitle him, and witnesses have been examined. *Id.* Petitioner asserts that requiring him to submit a declaration from trial counsel would contradict the *Strickland v. Washington*, 466 U.S. 668 (1984) standard. *Id.* Petitioner also asserts that Respondent incorrectly contends that he failed to establish prejudice as trial counsel's alleged errors relating to jury instructions and failure to impeach Edwards were particularly prejudicial considering the charges Petitioner faced. *Id.* Petitioner concludes that his allegations warrant him an evidentiary hearing and federal habeas relief. *Id.*

**Analysis**

The Supreme Court has explained that, if there is a reasonable probability that the outcome of a criminal trial might have been different as a result of a legal error, the defendant has established prejudice, and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198,

203-04 (2001). Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n. 7 (9th Cir. 2002). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, under *Strickland*, Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

As an initial matter, Petitioner is not entitled to an evidentiary hearing at this point as "review under [28 U.S.C.] § 2254(d)(1)is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563, U.S. 170, 181 (2001).

The Superior Court found that Petitioner's petition contained no evidence establishing that the outcome of Petitioner's trial would have been affected had his counsel made the alleged objections or impeached the identified witness. (ECF No. 10-16 at p. 4.) The Court here agrees with the Superior Court's reasoning as

Petitioner fails to indicate how remedying any of the alleged errors raises a reasonable probability of a different outcome at his trial. Assuming *arguendo* that Petitioner's trial counsel was deficient for not objecting to the jury instructions, the Court finds the verdict against Petitioner would not be undermined as the challenged jury instructions merely limited the use of the trial evidence during jury deliberations. The jury could still consider Petitioner's admission to being a member of the Encanto gang, knowing that one of the attacker's possessed of a knife, failing to prevent the second attack due to gang-related consequences, amongst other evidence before the jury at trial. Accordingly, there is no indication that the use of the challenged jury instructions negatively affected or prejudiced Petitioner at trial. The Superior Court's habeas decision did not result in an unreasonable determination of the facts in light of the evidence presented at trial. Petitioner's ineffective assistance of counsel claim based on his trial counsel's failure to properly impeach Betty Edwards fails as Edwards' testimony at trial was consistent with her statement to Officer Villagran. Therefore, the Court **RECOMMENDS** that Petitioner's claim for habeas relief on ineffective assistance of counsel grounds be **DENIED**.

### D. Insufficient Evidence

Petitioner contends that insufficient evidence supported his convictions for assault and the findings on gang enhancements. (ECF No. 1 at p. 30-31.) Since the Superior Court did not address the sufficiency of evidence claim Petitioner raised, the Court looks to the "last reasoned decision" provided by the California appellate court on direct appeal dated January 27, 2015. In rejecting the Petitioner's sufficiency of the evidence claim, the California Court of Appeals reasoned,

> "Edwards and Johnson testified that Pimental had encouraged Sanchez and Castro to retaliate against Arellano. Pimental ran alongside the two as they proceeded to attack Arellano a second time. Afterwards, when

13
16-cv-2212-LAB (DHB)

the two women confronted Pimental about his failure to stop the attack, he claimed he had directed Sanchez and Castro to undertake the attack. Pimental subsequently admitted to Detective Sherman that he had told Sanchez and Castor, 'Hey man, you guys, go,' noting they were energized. Pimental also knew before the stabbing that Sanchez had a knife. In light of that evidence and the gang expert's testimony regarding the hierarchy within the Encanto gang, the way in which younger gang members look up to older members, and the fact that gang members are expected to back each other up and not abandon one another, it was significant that Pimental admitted to the gang expert that he did nothing to stop the attack because he feared adverse consequences for himself if he had done so[6]…

Here, the evidence shows that Sanchez, Castro and Arellano were gang members. During the fight, gang names were shouted. Sanchez and Castro told Pimental that Arellano had 'fucked up' one of their 'homies.' In response to that show of disrespect by a rival gang member, Pimental directed Sanchez and Castro to attack Arellano. A jury could reasonably infer from the circumstances of the assault and the customs and priorities of the Encanto gang that Pimental intended by his support and encouragement of Sanchez and Castro to boost the Encanto gang's reputation. The expert testified that among gang members, respect from others was important to instill fear among rival gangs, permitting the Encanto gang to further its criminal interests. We conclude that sufficient evidence supports the mental element of the gang enhancement."

(ECF No. 10-12 at pp. 6, 10).

---

[6] Petitioner was interviewed by a Detective Sherman, who later testified at trial as a gang expert for the prosecution.

In opposition to Petitioner's claim, Respondent argues that the state court reasonably rejected Petitioner's claims of insufficient evidence. (ECF No. 9-1 at pp. 14-19.) Specifically, Respondent contends Petitioner failed to establish the California appellate court's rejection was contrary to or an unreasonable application of Supreme Court authority as he did not present any argument challenging its rejection. *Id.* at p. 18.

In reply, Petitioner contends that there is no evidence in this case which suggests Petitioner instigated the assaults on Arellano, especially with the knife, prior to the attack. (ECF No. 19 at p. 6.) Petitioner suggests that Petitioner's police interview represents a clearer version of what happened and that he did not know of the existence of the knife prior to the attack. *Ibid.*

**Analysis**

The United States Supreme Court has "made clear that [insufficient evidence] claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

The first layer is the standard of review for insufficient evidence claims, which is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (italics in original). Under this standard, *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 132 S.Ct. 2, 3-4 (2011). Consequently, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id.* at 4; *see Johnson*, 132 S.Ct. at 2065 ("[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of

bare rationality."). Also, under *Jackson*, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326; *McDaniel v. Brown*, 558 U.S. 120, 133 (2010).

The second layer is the "additional layer of deference" under AEDPA requiring a petitioner to establish that the state court unreasonably applied the *Jackson* standard to the facts of the case. *Juan H. v. Allen*, 408 F.3d 1262, 1274-5 (9th Cir. 2005). More specifically, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazo*, 132 S.Ct. at 4 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

In California, to be guilty of a crime as an aider and abettor, a person must aid the direct perpetrator by acts or encourage him by words or gestures. *People v. Villa*, 156 Cal.App.2d 128, 134 (195). Under the natural and probable consequences doctrine, the person must give such aid or encouragement "with knowledge of the criminal purpose of the [direct] perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the crime in question. *People v. McCoy*, 25 Cal.4th 1111, 1118 (2001); *People v. Beeman*, 35 Cal.3d 547, 560 (1984). To establish a gang enhancement, the prosecution must prove two elements: (1) that the crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang," and (2) the defendant had "the specific intent to promote, further, or assist in any criminal conduct by gang members." Cal. Pen. Code §186.22, subd. (b)(1).

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of the assault under an aider

and abettor liability, with a gang enhancement, beyond a reasonable doubt. Edwards' statement to Officer Villagran and testimony corroborate the prosecutor's contention that Petitioner aided and abetted the assault by encouraging the attackers. Kimberley Johnson testified that Petitioner as an older male who yelled, "69," while encouraging Sanchez and Castro during the incident. Petitioner admitted to being a member of the Encanto gang, knowing that one of the attacker's possessed of a knife, failing to prevent the second attack due to gang-related consequences, amongst other evidence before the jury at trial. The attackers made Petitioner aware that the attack was in retaliation for Arellano's disrespect of a younger Encanto gang member. In addition, Petitioner failed to prevent the further attack on Arellano by Castro and Sanchez after being made known of the parties' affiliations, the attacker's possession of a knife, and the attackers' intent could be construed as encouragement and/or facilitation of the attackers' later behavior. Accordingly, the Court finds that a rational trier of fact could impute specific intent to promote or further the attackers' criminal conduct on Petitioner as he admitted that he could not prohibit the retaliation from taking place or he would face retribution from his Encanto gang affiliates. For those reasons, the Court **RECOMMENDS** that Petitioner's claim for habeas relief on sufficiency of the evidence grounds be **DENIED**.

### E. Instructional Errors

Petitioner lastly claims that the trial court erroneously instructed the jury on the law of aiding and abetting and the natural and probable consequences doctrine. (ECF No. 1 at pp. 32-36.) In response, Respondent argues that Petitioner's claims of instructional error do not raise a federal question. (ECF No. 91 at pp. 19-20.) In his traverse, Petitioner concedes that the state court's decision was not contrary to, or an unreasonable application of clearly established federal law. (ECF No. 19 at p. 6.) Therefore, the Court **RECOMMENDS** that Petitioner's claim for habeas relief

17
16-cv-2212-LAB (DHB)

on grounds of instructional error be **DENIED**.

## III. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Larry A. Burns under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d) of the United States District Court for the Southern District of California. For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

**IT IS HEREBY ORDERED** that no later than **December 29, 2017**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than ten (10) days from service of Petitioner's filed Objections. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: December 4, 2017

LOUISA S PORTER
United States Magistrate Judge